IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA,

v.  CASE NO. 1:06-cr-00038-MP-AK

JOHN MICHAEL LOWRY,

    Defendant.

_____/

## **O R D E R**

This matter is before the Court on Docs. 105 and 106, Motion to Suppress Evidence by John Michael Lowry.  A reading of defendant's Motion to Suppress (doc 105) would lead one to the conclusion that, based on the "facts" therein recited, the motion is well founded.

The essential allegations of the motion are that the defendant leases the property in question; that the property is enclosed by a continuous chain-link fence; that the defendant has permitted trees and thick brush to grow against the fence and at least two yards into the property on three sides, the fourth side abutting an undeveloped wooded area; the gate to the main entrance has been rendered inoperable such that entry through it is impossible; that it is defendant's habit to keep the service gate closed at all times, including upon arrival when he would stop his vehicle once entry had been made and close the gate before continuing to the house; that "no trespassing" signs are posted at both entrances and along the fence; that defendant keeps a large empty container next to the main entrance, with a sign indicating that all deliveries should be deposited into that receptacle; that defendant has a special electronic device installed near the main entrance, which allows the water and electrical usage meters to be remotely read without having to make entry onto the property; that on the date in question,

August 28, 2006, defendant came home for lunch, entered onto the property through the service entrance and the DEA agents, who had been waiting for him, followed him through the service gate in multiple vehicles, exited those vehicles, and knocked on his front door; when defendant answered the front door, he was informed that they had a tip he was growing marijuana on the property and that they could smell the marijuana, and that things would go easier for him if he consented to a search of the property; defendant gave his consent and the contraband, which is the subject of the suppression motion, was located.

The facts developed at the suppression hearing tell a somewhat different story, or put a different slant to those alleged "facts" contained in the motion to suppress. Testimony revealed that on August 19, 2006 during a routine surveillance by the DEA of a local hydroponic supply house that, by reputation, sold only or mostly to individuals growing marijuana, agents observed defendant (not yet identified by name) making purchases; they ran the tag number of his truck but it came back to a post office box; through subsequent surveillance they traced defendant to his home at 5041 NW 23rd Ave, Gainesville, Florida; over the next few months the property was surveilled and property records and electric usage records were checked; the electric usage showed a substantial increase in the consumption of electricity as compared to the usage immediately after the account was opened by the defendant; through surveillance, which took place from the public sidewalk abutting defendant's property along 23rd Ave, the agents were able to see the detached garage or outbuilding, hear the air conditioner cycling, observed light reflective Mylar, observed 100-200 empty black plastic pots, smelled the odor of flowering marijuana, could hear the light ballast as it cycled on and off which, according to the testimony, was all indicative of an indoor marijuana grow.

On August 28, 2006 ,DEA Agent Andrews, in preparation for obtaining a search warrant for the premises located at 5041 NW 23rd Ave., dispatched two task force officers to maintain a surveillance of the property while he prepared an affidavit in support of the search warrant. DEA agent Robert Riley joined the two other task force officers in the surveillance.  At 11:59 a.m. on August 28, 2006, Agent Andrews faxed his rough affidavit to AUSA Jerry Sanford after previously telling him that he was going to fax over a draft of an affidavit for a search warrant for the defendant's residence but first wanted to attempt to contact the defendant about the situation and, if unable to do so, would then seek to have the search warrant issued.  After faxing the draft affidavit, Agent Andrews went to join the other three agents that were surveilling the defendant's property.

At 12:49 p.m. the defendant arrived at his property, opened and drove through the gate, leaving it unlocked and open, and proceeded to his house. Approximately three or four minutes later, the agents drove through the gate and proceeded to the residence and knocked on the front door.  When defendant answered the door, the agents identified themselves, told them the purpose of their visit, and wanted to talk to him about it; the defendant was also advised that they were prepared to seek a search warrant for his property. After a few minutes, the defendant consented to the search of his premises and executed a written consent to search. All of this, from the agents' entry onto the property, knocking on the door, and obtaining the consent to search (Gov. Ex 1), took no more than five to ten minutes.

Now, as to the variances between the written "facts" contained in the motion to suppress and those revealed at the hearing, the Court finds as follows: (1) The property is indeed fenced (placed there by the  owner, not the defendant) but the fence is down in one or two places

because trees have fallen across it; (2) there is indeed a thick growth of bushes along the inside border of the fence, but that is the state of growth that was present before the defendant leased the property approximately 12-14 months prior to the search in question; (3) there are "no trespassing" signs on the fence, but these were not placed there by the defendant, but by the owner and previous tenant; (4) the electric meter is indeed read "remotely" and not at the house, but this was not of the defendant's doing, but the previous owner's. Indeed, the evidence at the hearing is that electric companies in the area do this as a matter of company policy; (5) the water meter is indeed located outside of the fence between the public sidewalk and the curb of 23rd Ave but this, again, was not at the defendant's urging, but apparently company policy. Again, this meter location preceded defendant's lease of the property; (6) there are indeed two gates identified in the motion as the "main" gate and the "service" gate. In actuality, only the gate described as "service gate" is used for ingress and egress onto the property. When the defendant sought to enter the property in his vehicle through the "main gate" he was informed by the owner not to do so; (7) the receptacle placed at the gate "for deliveries" was not placed there by the defendant, but by the owner; (8) the defendant's statement concerning his "habit" of closing of the gate upon entry was contradicted by the agents; they testified that, while being observed by the agents during the few months prior to the date here in question, the defendant, left the gate open as many times as he closed it upon his entering the property. In short, the testimony is insufficient to establish this conduct as a legal "habit" under Rule 406, federal Rule of Evidence.

      The evidence shows that the purpose of the agent's entry onto the property of the defendant was simply to "knock and talk" in an effort to resolve the matter short of the execution of a search warrant. The agent's entry onto the property for this limited purpose was not in

violation of his Constitutional rights. Further, the defendant's consent to search was knowing and voluntary on his part , without being subjected to any force, pressure, or intimidation on part of the agents.  Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

The Motion to Suppress (doc 105) is DENIED.

**DONE AND ORDERED** this  *6th*   day of June, 2007

*s/Maurice M. Paul*
Maurice M. Paul, Senior District Judge